Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| IRIS MORAIMA MORA RODRÍGUEZ<br><br>Peticionaria<br><br>v.<br><br>JOSÉ MANUEL FONTANEZ RIVERA<br><br>Recurrido | TA2026CE00499 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón, Sala de Familia y Menores<br><br>Caso Núm.: BY2020RF00714<br><br>Sobre: Divorcio – Ruptura Irreparable |

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Bonilla Ortiz y la Jueza Martínez Cordero.

*Martínez Cordero, jueza ponente*

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 24 de abril de 2026.

Comparece Iris Moraima Mora Rodríguez, a través del Programa de Práctica Compensada de la Corporación de Servicios Legales de Puerto Rico (en adelante, peticionaria) mediante un recurso de *certiorari,* para solicitarnos la revisión de la *Resolución Provisional de Alimentos* emitida y notificada el 25 de marzo de 2026, por el Tribunal de Primera Instancia, Sala Superior de Bayamón.[1] Mediante la *Resolución* recurrida, el tribunal de instancia, en el marco de un proceso de revisión de pensión alimentaria, acogió las recomendaciones del Acta (Informe), rendida el 20 de marzo de 2026,[2] por la Examinadora de Pensiones Alimentarias (EPA), por lo que estableció cierta obligación alimentaria y señaló vista para el 8 de mayo de 2026.

Por los fundamentos que expondremos, se *deniega* la expedición del auto de *Certiorari.*

---

[1] Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC TPI), a la Entrada Núm. 239.
[2] *Íd.*, a la Entrada Núm. 238.

## I

Conviene mencionar que esta es la *segunda* ocasión en cual la partes comparecen ante esta Curia mediante un recurso apelativo.[3] A tenor, nos circunscribiremos a los asuntos atinentes a la controversia de marras.

Producto de la relación matrimonial entre las partes, procrearon una hija, K.L.F.M., quien nació el 27 de noviembre de 2007. Posteriormente, mediante *Sentencia enmendada Nunc Pro Tunc*, emitida el 7 de octubre de 2021, notificada al día siguiente, las partes disolvieron su matrimonio.

Dicho lo anterior, como parte de los procesos relacionados al divorcio, mediante *Resolución*, emitida y notificada el 31 de agosto de 2020, se estableció una pensión alimentaria a favor de la menor, hija de las partes.[4]

Años más tarde, el 9 de enero de 2025, la peticionaria interpuso una *Solicitud de revisión de pensión alimentaria*.[5] En respuesta, mediante *Orden*, emitida el 9 de enero de 2025, notificada al día siguiente, el foro de instancia refirió el caso a la EPA.[6]

Subsiguientemente, la EPA procedió a calendarizar la vista de revisión de pensión alimentaria para el 24 de febrero de 2025.[7]

Así las cosas, el 18 de febrero de 2025, la peticionaria presentó un escrito al cual le adjuntó su Planilla de Información Personal y Económica (PIPE), a la cual le adjuntó ciertos documentos.[8] Por su parte, el 24 de febrero de 2025, el señor José M. Fontánez Rivera (en

---

[3] El primer recurso apelativo corresponde a una petición de *certiorari* presentada en el alfanumérico TA2025CE00239, resuelta el 9 de octubre de 2025. Mediante la correspondiente *Sentencia*, un Panel Hermano revocó los dictámenes recurridos, es decir, dos (2) órdenes emitidas el 3 de julio de 2025. A tenor, le requirió a la primera instancia judicial celebrar una vista de mostrar causa sobre una *Orden* expedida el 20 de febrero de 2025, y dirimir si procedía el pago de los $600.00 dólares de gastos de graduación, reclamados por la aquí peticionaria.
[4] SUMAC TPI, a la Entrada Núm. 45.
[5] *Íd.,* a la Entrada Núm. 134.
[6] *Íd.,* a la Entrada Núm. 135.
[7] *Íd.,* a la Entrada Núm. 136.
[8] *Íd.,* a la Entrada Núm. 142.

adelante, recurrido) interpuso escrito para presentar su PIPE, a la cual también le adjuntó ciertos documentos.[9]

Tras varios incidentes procesales innecesarios reseñar, los cuales incluyeron el reseñalamiento de la vista ante la EPA en varias ocasiones, el 21 de mayo de 2025, se celebró vista.[10]. Según se desprende del Acta de la EPA, las partes lograron una estipulación provisional sobre pensión alimentaria, la cual fue referida a la juzgadora de instancia.[11]

En respuesta, mediante *Resolución* emitida el 12 de junio de 2025, y notificada al día siguiente, el tribunal de instancia acogió la estipulación sobre pensión alimentaria provisional y señaló vista para el 30 de junio de 2025, ante la EPA.[12]. Conviene destacar que la pensión alimentaria provisional establecida fue por la suma de $600.00 dólares quincenales, en pago directo. Además, según se desprende de la *Resolución*, se establecieron otras partidas como parte de la pensión alimentaria provisional. En este punto, las partes continuaron con el descubrimiento de prueba, por lo que la vista señalada fue transferida por diferentes razones para el 14 de noviembre de 2025.[13]

En el interín, el 14 de noviembre de 2025, el recurrido interpuso una *Moción de rebaja de pensión alimentaria.*[14]. En esa misma fecha, se señaló vista ante la EPA, según había sido programado, empero, la misma fue reseñalada para el 14 de enero de 2026.[15]. Puntualizamos que, a esta fecha, se mantenía vigente el descubrimiento de prueba.

---

[9] SUMAC TPI, a la Entrada Núm. 147.
[10] *Íd.*, a la Entrada Núm. 175.
[11] *Íd.*
[12] *Íd.*, a la Entrada Núm. 176.
[13] *Íd.*, a la Entrada Núm. 209.
[14] *Íd.*, a la Entrada Núm. 211.
[15] *Íd.*, a la Entrada Núm. 213.

La vista en cuestión fue celebrada el 14 de enero de 2026.[16] Producto de la misma, la EPA rindió el *Informe de la examinadora de pensiones alimentarias*.[17] En el referido informe, expresó que el recurrido aceptaba capacidad económica. Recomendó una pensión alimentaria provisional por la suma de $765.48 dólares mensuales, a pagarse a razón de $383.00 dólares quincenales. Además, consideró que el recurrido asumiría el cien por ciento (100%) de los gastos médicos no cubiertos por el plan médico de la menor; el 100% del gasto de ortodoncia, y el 100% del gasto de espejuelos, previo acuerdo entre las partes. De igual forma, el recurrido aportaría igual por ciento en cuanto a los gastos universitarios no cubiertos por la beca.

A tenor, el 20 de enero de 2026, el foro de instancia emitió y notificó una *Resolución provisional de alimentos,* mediante la cual acogió las recomendaciones contenidas en el Informe de la EPA.[18] Así, pues, se estableció la pensión alimentaria recomendada y antes reseñada. Además, se ordenó la celebración de una vista para el 19 de marzo de 2026, ante la EPA.

En reacción, el 27 de enero de 2026, la parte peticionaria interpuso una moción de *Reconsideraci[ó]n y relevo de resoluci[ó]n por falta de debido proceso de ley a resoluci[ó]n (Sumac 226).*[19] En esta, argumentó, esencialmente, que la pensión alimentaria de la menor se computó utilizando exclusivamente los gastos reclamados por el recurrido en su PIPE. Arguyó que, por el contrario, se debió de haber tomado en consideración elementos adicionales, como el estilo de vida de la menor y sus necesidades especiales, tales como gastos de computadora, autoexpreso, gastos de compra, comida fuera del hogar y gastos de ropa. Asimismo, expuso que fue un error

---

[16] SUMAC TPI, a la Entrada Núm. 225.
[17] *Íd.*
[18] *Íd.,* a la Entrada Núm. 226.
[19] *Íd.*, a la Entrada Núm. 229

haber celebrado vista sin antes permitir enmendar la PIPE, para que se contara con todos los gastos antes señalados.

Subsiguientemente, el 9 de febrero de 2026, la EPA presentó un escrito en atención a la solicitud interpuesta por la peticionaria.[20] Además de realizar un recuento de los asuntos que atendió durante la vista, recomendó que se mantuviese la pensión alimentaria tal y cual establecida hasta que se celebrara la vista final de alimentos. De ahí, el 10 de febrero de 2026, el foro de instancia emitió y notificó una *Orden,* mediante la cual denegó la solicitud interpuesta por la peticionaria.[21]

Así las cosas, el 16 de marzo de 2026, la peticionaria presentó una moción *Al expediente judicial* la cual acompañó con una serie de documentos relacionados a los gastos de la menor.[22] Asimismo, adjuntó una PIPE enmendada. En respuesta, mediante *Orden* emitida y notificada el 17 de marzo de 2026, el foro de instancia quedó enterado.[23]

Subsiguientemente, el 19 de marzo de 2026, se celebró la vista de revisión de pensión alimentaria antes señalada.[24] Producto de la vista, la EPA rindió un *Acta.*[25] Según se desprende del antedicho documento, en dicha vista se argumentó que a tan solo dos (2) días de la vista la peticionaria había presentado una PIPE enmendada, por lo que el recurrido necesitaba tiempo para examinarla y evaluar los nuevos gastos informados para determinar si se mantenía la aceptación de capacidad. Por otro lado, el recurrido argumentó haber cursado un descubrimiento de prueba con la finalidad de que se evidenciaran los nuevos gastos reclamados. Por otro lado, la peticionaria manifestó que se opondría a dichos requerimientos. De

---

[20] SUMAC TPI, a la Entrada Núm. 233.
[21] *Íd.,* a la Entrada Núm. 234.
[22] *Íd.*, a la Entrada Núm. 235.
[23] *Íd.,* a la Entrada Núm. 236.
[24] *Íd.,* a la Entrada Núm. 238.
[25] *Íd.*

igual forma, se discutieron asuntos relacionados al gasto de vivienda y al de vestimenta.

De ahí, el 25 de marzo de 2025, tribunal *a quo* emitió la *Resolución provisional de alimentos* objeto de este recurso.[26] Mediante esta *Resolución,* el foro de instancia acogió las recomendaciones de la EPA. En consecuencia, estableció una pensión alimentaria provisional por la suma de $408.00 quincenales y, en síntesis, mantuvo de forma provisional la obligación relacionada a los gastos médicos en la misma proporción previamente establecida.  Además, señaló una vista ante la EPA para el 8 de mayo de 2026, para lo cual se le ordenó a la peticionaria presentar una certificación de todos los pagos realizados por concepto de vivienda (hipoteca), y desglosar todos los gastos de vestimenta, según incurridos y evidenciados en la PIPE enmendada presentada el 16 de marzo de 2026.

Inconforme, el 23 de abril de 2026, la peticionaria acudió ante esta Curia, mediante el presente recurso de *certiorari,* en el cual esgrimió los siguientes tres (3) errores:

> **ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DICTAR RESOLUCI[Ó]N ACOGIENDO LAS RECOPMENDACIONES DEL [*sic*] ACTA DE LA EPA DONDE SE PERMITE QUE EL DEMANDADO EVAL[Ú]E SU DECISI[Ó]N DE ASUMIR CAPACIDAD[.]**

> **ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DICTAR RESOLUCI[Ó]N ACOGIENDO LAS RECOPMENDACIONES [*sic*] DEL ACTA DE LA EPA DONDE SE PERMITE QUE EL DEMANDADO ENV[Í]E UN SEGUNDO PLIEGO DE INTERROGATORIOS[.]**

> **ERR[Ó] AL DICTAR RESOLUCI[Ó]N ACOGIENDO LAS RECOMENDACIONES DEL ACTA DE LA EPA DONDE SE DIVIDE EN PARTES IGUALES EL GASTO DE LA MENOR CUANDO EL PADRE TIENE UN INGRESO MAYOR A LA MADRE CUSTODIA[.]**

Conforme a la Regla 7 (B) (5) del Reglamento del Tribunal de Apelaciones, este Tribunal tiene la facultad de prescindir de términos no jurisdiccionales, escritos, notificaciones o

---

[26] SUMAC TPI, a la Entrada Núm. 239.

procedimientos específicos en cualquier caso ante su consideración, con el propósito de lograr su más justo y eficiente despacho.[27] En consideración a lo anterior, y luego de haber examinado la totalidad de los autos ante nos, hemos colegido eximir a la parte recurrida de presentar escrito en oposición al recurso de revisión judicial ante nos.

## II

### A. Expedición del Recurso de *Certiorari*

Los recursos de *Certiorari* presentados ante el Tribunal de Apelaciones deben ser examinados en principio bajo la Regla 52.1 de las Reglas de Procedimiento Civil.[28] Esta Regla limita la autoridad y el alcance de la facultad revisora de este Tribunal mediante el recurso de *Certiorari* sobre órdenes y resoluciones dictadas por los Tribunales de Primera Instancia. La Regla lee como sigue:

> El recurso de Certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de Certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.[29]
>
> [. . .].[30]

Por su parte, la Regla 52.2 (b) dispone sobre los términos y efectos de la presentación de un recurso de *Certiorari* que:

> Los recursos de *certiorari* al Tribunal de Apelaciones para revisar resoluciones u órdenes del Tribunal de Primera Instancia o al Tribunal Supremo para revisar las demás sentencias o resoluciones finales del Tribunal de Apelaciones en recursos discrecionales o para revisar cualquier resolución interlocutoria del Tribunal de Apelaciones

---

[27] *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág.15, 215 DPR __ (2025).
[28] 32 LPRA Ap. V, R. 52.1.
[29] *Íd.*
[30] *Íd.*

deberán presentarse dentro del término de treinta (30) días contados desde la fecha de notificación de la resolución u orden recurrida. El término aquí dispuesto es de cumplimiento estricto, prorrogable sólo cuando medien circunstancias especiales debidamente sustentadas en la solicitud de *certiorari.*

[. . .].[31]

Establecido lo anterior, precisa señalar que el recurso de *certiorari* es un vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior.[32] A diferencia del recurso de apelación, el auto de *certiorari* es de carácter discrecional.[33] La discreción ha sido definida como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera".[34] A esos efectos, se ha considerado que "la discreción se nutre de un juicio racional apoyado en la razonabilidad y en un sentido llano de justicia y no es función al antojo o voluntad de uno, sin tasa ni limitación alguna".[35]

Por otra parte, la Regla 40 del Reglamento del Tribunal de Apelaciones esgrime que el Tribunal deberá considerar los siguientes criterios para expedir un auto de *Certiorari:*

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición el auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

---

[31] 32 LPRA Ap. V, R. 52.1.

[32] *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023)*; 800 Ponce de León v. AIG,* 205 DPR 163, 174 (2020).

[33] *Rivera Figueroa v. Joes's European Shop,* 183 DPR 580, 596 (2011).

[34] *Mun. de Caguas v. JRO Construction, Inc.* 201 DPR 703, 712 (2019); *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 434-435 (2013).

[35] *SLG Zapata-Rivera v. J.F. Montalvo,* supra, 435.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. [36]

De otro lado, el Tribunal Supremo de Puerto ha establecido que un tribunal revisor no debe sustituir su criterio por el del foro de instancia, salvo cuando estén presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto.[37] Quiérase decir, no hemos de interferir con los Tribunales de Primera Instancia en el ejercicio de sus facultades discrecionales, excepto en aquellas situaciones en que se demuestre que este último: (i) actuó con prejuicio o parcialidad, (ii) incurrió en un craso abuso de discreción,  o (iii) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[38]

Además, al evaluar la procedencia del referido auto, debemos tener presente que el foro primario tiene amplia discreción para manejar los casos ante su consideración.[39] De manera que, los Tribunales Apelativos no debemos pretender conducir ni manejar el trámite ordinario de los casos que atiende la primera instancia judicial.[40] Ello, puesto que el foro primario es el que mejor conoce las particularidades del caso.[41]

Finalmente, advertimos que la denegatoria a expedir un recurso discrecional no implica la ausencia de error en el dictamen cuya revisión se solicitó, como tampoco constituye una adjudicación en sus méritos. Meramente, responde a la facultad discrecional del foro apelativo intermedio para no intervenir a destiempo con el trámite pautado por el foro de instancia.[42]

---

[36] Regla 40 del Reglamento del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA*, supra, a las págs. 59-60.

[37] *Coop. Seguros Múltiples de P.R. v. Lugo,* 136 DPR 203, 208 (1994).

[38] *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

[39] *BPPR v. SLG Gómez-López*, 2023 TSPR 145, 212 DPR ___ (2023).

[40] *Mejías v. Carrasquillo*, 185 DPR 288, 306-307 (2012).

[41] *Íd.*

[42] *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96 (2008).

### III

En el presente recurso, la peticionaria, esencialmente, presenta su inconformidad con una *Resolución* del 25 de marzo de 2026, mediante la cual el tribunal *a quo* acogió las recomendaciones del acta de la EPA.

Según expusimos en nuestra exposición doctrinal previa, el *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar, a su discreción, una decisión de un tribunal inferior.[43] A esos efectos, la naturaleza discrecional del recurso de *certiorari* queda enmarcada dentro de la normativa que le concede deferencia de las actuaciones de los Tribunales de Primera Instancia, de cuyas determinaciones se presume su corrección. Ahora bien, aunque la Regla 52. 1 de Procedimiento Civil nos permite intervenir en caso de relaciones de familia,[44] esta Regla no opera en el vacío, tiene que anclarse en una de las razones de peso que establece la Regla 40 del Reglamento del Tribunal de Apelaciones.[45]

Tras evaluar minuciosamente el recurso presentado por la peticionaria, y luego de una revisión de la totalidad del expediente ante nos, es nuestra apreciación que no se configuran ninguna de las instancias que justificaría la expedición del auto de *certiorari* al amparo de Regla 52.1 de Procedimiento Civil,[46] ni tampoco en virtud de la Regla 40 del Reglamento del Tribunal de Apelaciones.[47] Los señalamientos de error y los fundamentos aducidos en la petición presentada no logran activar nuestra función discrecional en el caso de autos. Por otro lado, entendemos que el dictamen recurrido no es patentemente erróneo, y encuentra cómodo resguardo en la sana discreción de la primera instancia judicial. Además, razonamos que

---

[43] *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009).
[44]  32 LPRA Ap. V, R. 52.1.
[45] *In re Aprob. Enmdas. Reglamento TA*, supra, a las págs. 59-60.
[46] 32 LPRA Ap. V, R. 52.1.
[47] 4 LPRA Ap. XXII-B, R.40.

la peticionaria no nos ha persuadido de que, al aplicar la norma de abstención apelativa en este momento, conforme al asunto planteado, constituirá un rotundo fracaso de la justicia. Menos aun cuando coincidimos en que no existen elementos que justifiquen nuestra intervención con el manejo del caso, según determinado por el foro primario en este caso.

Por todo lo antes mencionado, no atisbamos razón para intervenir con la determinación recurrida.

IV

Por los fundamentos que anteceden, se *deniega* la expedición del auto de *Certiorari*.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones